STATE OF IOWA, appellee, v. CLIFFORD CLAUDE HOBBS, appellant.

## No. 50038.

(Reported in 107 N.W.2d 242)

440

JANUARY 11, 1961.

Charles W. Bowers and James Lawyer, both of Des Moines, for appellant.

Norman A. Erbe, Attorney General of Iowa, Marion R. Neely, Assistant Attorney General, Ray Hanrahan, Polk County Attorney, and Raymond A. Fenton, Assistant Polk County Attorney, for appellee.

THOMPSON, J.—The defendant was jointly indicted, with Harry Joseph Gossett and Bernard Clay, for the crime of breaking and entering the building of the Hiland Potato Chip Company, in Des Moines, in violation of section 708.8 of the 1958 Code of Iowa. He was tried separately and found guilty by

jury verdict, and from judgment on the verdict he appeals to this court. The breaking and entering took place between 3 p.m. on Saturday, October 3, 1959, and 2:30 a.m. on Monday, October 5 next, when an employee of the Lewis System, a commercial patrol agency, checked the building and found it had been entered by breaking a door latch. A large safe on the premises had been battered and a handle broken off, but it had not been entered. A small safe, which contained approximately $40,000 in $1000, $500 and $100 bills was missing. It was later found in a dump, battered and broken open and, of course, with the money missing.

There was ample evidence to connect the defendant with the breaking and entering and the larceny of the safe and its contents, and it is not contended otherwise. The facts in the record all appear from the State's evidence; the defendant did not take the stand or offer any evidence. His appeal is based on complaints of the admission of evidence and of Instruction No. 8 given by the trial court. We shall not set out in detail the material evidence which, even without the testimony objected to, clearly made a jury question of defendant's guilt, but content ourselves with saying it was sufficient to show defendant's implication in the crime, so far as to require submission of the question of his guilt to the jury. We say this in deference to Code section 793.18, which, in keeping with our concept of justice to those accused of crimes, requires us to examine the record without regard to technical defects and to render such judgment as the law demands. This we have done.

■ I. Defendant's first assignment of error attacks the admission of the testimony of one Elkin B. Hughes, manager of an auto sales company in Des Moines. Hughes testified, over objection, that the testimony sought to be elicited was incompetent, irrelevant and immaterial, was hearsay and referred to transactions subsequent to the crime, that on October 8 following the burglary the defendant came to his place with one Turner. There was some talk about the purchase of a 1959 Cadillac car owned by another car dealer, which was purchased either by Turner or the defendant and paid for with four one-thousand or three one-thousand and two five-hundred dollar

bills. He could not say whether all of the conversation was with the defendant, or with Turner, or with both. The first he saw of the money was when it was lying on the seat of the car. Title to the car was transferred to Turner.

The defendant objects strongly that there is nothing to connect him with the purchase of the car or with the money. We are unable to agree. He had at least sufficient interest in the transaction to accompany Turner; and they brought with them $4000 in bills of the somewhat unusual denominations taken from the stolen safe. The situation is identical with that found in State v. Smith, 247 Iowa 500, 502, 503, 504, 73 N.W.2d 189, 190. There the defendant was indicted for possession of burglar tools. He was found riding in a car driven by another, with a third person in the rear seat. Also found in the car was a bag containing burglar tools. The same contention was made there as here: that there was nothing to show defendant's possession. But we said the presence of the defendant in the car raised a question of circumstantial evidence for the jury. The contention goes to the weight of the evidence rather than its admissibility.

II. The same witness testified that about the same time, October 8 or 10, he sold a 1959 Lincoln automobile to Harry Joseph Gossett for $4500 plus sales tax. Gossett is clearly identified by substantial evidence in the case as a fellow conspirator with the defendant and one Bernard Clay in the breaking and entering and larceny of the safe. The chief contention here is that Gossett is shown by the State's evidence to be a co-conspirator, and so evidence of his acts and declarations after the commission of the crime and not in the presence of the defendant is not admissible. Hughes also testified that about the same date he sold a Mercury car to Clay, and the same objection to the admission of this testimony is urged.

It is correct that ordinarily the acts or declarations of a fellow conspirator done or made after the commission of the crime are not admissible against a defendant who was not present at the time. But there is a clear exception to this rule. It may always be shown that any one of the conspirators was in possession of the "fruits of the crime", after the crime has

been committed. Volume 2, Wharton's Criminal Evidence, Twelfth Ed., section 429, page 201; Underhill's Criminal Evidence, 4th Ed., section 779, pages 1418–1421; State v. Tripp, Mo., 303 S.W.2d 627, 632; Brandt v. State, 129 Tex. Crim. Rep., 558, 90 S.W.2d 263, 264; Strunk v. Commonwealth, 285 Ky. 783, 149 S.W.2d 528, 530. The rule contended for by the defendant does not apply here.

■ III. But the defendant urges that there is no sufficient showing that the money used by Gossett and Clay in the purchase of their respective automobiles was the "fruits of the crime." It is true the denominations of the bills is not shown. At this point it is necessary to refer to further evidence concerning Gossett, to which exception was taken. Two Des Moines detectives testified that during the latter part of the month of October they went to Mexico, Missouri, where Gossett had been apprehended, and returned him to Des Moines. At the time Gossett had in his possession the Lincoln automobile and $9300 in cash, in bills of various denominations. Here again the defendant says there is no sufficient showing that this was the proceeds of the burglary.

Again we are in disagreement. It is true the showing is somewhat more remote than in the case of the defendant himself and his part in the purchase of the Cadillac. The money is not identified. But it is common practice among law-enforcement officers when a crime has been committed which places the perpetrator in possession of considerable sums of money to look for someone who is making excessive and unusual expenditures. The facts here show that within a few days after the burglary at the Hiland Company the defendant and another person took part in the purchase of a Cadillac automobile, paid for in cash with bills of unusual denomination such as those stolen; and that the two others who are shown by the State's evidence to have taken part in the crime also purchased expensive automobiles; and that one of them—Gossett—was in the possession of a large amount of cash. We think it was a jury question whether the evidence of the purchases by Gossett and Clay tended to show their possession of some of the "fruits of the crime" and so bring the testimony within the exception to the

rule above stated. This is especially true as to Clay, since the record shows that on October 5 following the burglary he borrowed an automobile from one Jones, ostensibly to take his family to a theater. Taking the record at this point, it may be inferred Clay did not have an automobile of his own; yet shortly after he was able to buy one.

In State v. Gates, 246 Iowa 344, 350, 351, 67 N.W.2d 579, 583, we quoted with approval from Volume 2 Wharton's Criminal Evidence, Eleventh Ed., page 1293: "If a question of fact as to the connection of the articles sought to be admitted with the defendant or the crime is raised, the evidence should be admitted for the determination of the jury. The lack of positive identification in such a case affects the weight of the article or substance as evidence, rather than its admissibility." It is true this refers to what is known as demonstrative evidence; but that the rule is not different generally, see State v. Sedig, where we said:

"Circumstantial evidence is admissible where it leads to a reasonable inference and not a mere suspicion of the existence of the fact sought to be proven. The trial court usually has considerable discretion in ruling on the admissibility of circumstantial evidence. A wide latitude is generally allowed in admitting it where direct evidence is lacking to establish a party's theory." (Citing authorities) State v. Sedig, supra, 235 Iowa 609, 616, 617, 16 N.W.2d 247, 251.

Under the circumstances shown here, it seems entirely proper that the jury was permitted to know of and to consider the purchase of the three automobiles within a few days after the theft of the sum of $40,000 and the possession of the sum of $9300 by Gossett. The ordinary experience of men tells that these were unusual happenings, and the jury was properly allowed to draw the inference, if it saw fit, that they were connected with the burglary and represented a disbursement of the proceeds of the crime. It is true the money in Gossett's possession was not in bills of the same denomination as those stolen, at least not entirely. But money is easily changed from one form to another, and Gossett had had many days to convert it if he elected so to do. We think the evidence admissible for

such weight as the jury might decide to give it. We have here ample evidence, not all of which is set out in this opinion, to connect the defendant, Gossett and Clay, with the burglary; we see nothing unfair in showing their purchases of cars immediately following or in permitting the jury to draw the inference, which, ordinarily, reasonable men might draw, that these were bought with a part of the "fruits of the crime."

██ IV. The testimony of Booker T. Jones was admitted over objection, and error is predicated. The same contention is made: that is, that the evidence so introduced shows acts and declarations of the conspirator Clay, not in the presence of the defendant, and after the commission of the crime; and so was incompetent and prejudicial. Some additional facts should here be stated. One James Davis testified for the State that late on October 4 he saw the defendant, with Gossett and Clay, and they told him they had left something in his garage and " 'will get it out tomorrow.' " On the next day he saw the three in his garage. They were hammering on a safe, which he thought was the same safe in evidence. The next morning the safe was gone, and there were pieces of concrete on the floor. Jones testified that on October 5 Clay borrowed his automobile, for the ostensible purpose of taking his family to a drive-in theater. It was returned on October 6. He had never carried a safe or concrete blocks in the trunk of his car.

There was other evidence that particles of paint and concrete were found in the trunk of the Jones car shortly after it had been borrowed by Clay. These were analyzed at the laboratories of the Federal Bureau of Investigation in Washington, D. C., and two experts from this organization testified that these came from the safe which had been stolen and later found in a dump by Des Moines police officers.

The objection to Jones' testimony is that it concerned an act of a conspirator—Clay, after the commission of the crime and when the defendant was not present. Here counsel misconceives the significance of the evidence. Clay's declarations and acts were not made and done after the completion of the crime. It was a part of the crime to dispose of material evidence which might connect the criminals with the criminal act. This

seems so evident that citation of authority is unnecessary; but we find an identical situation has been passed upon by this court in State v. Struble, 71 Iowa 11, 15, 16, 32 N.W. 1, 3. There a dwelling house had been entered by three men, and a trunk taken therefrom. Two of the conspirators, other than the defendant, were seen later the same night driving a buggy near the place where the discarded trunk was found. The same objection was made there as here. But we said: "Now, if they did this, their act on the same night about two hours after the burglary, in endeavoring to mislead and avert suspicion from the guilty parties, by depositing the trunk in a remote place, was a part of the transaction in which the burglary was committed."

Objection was also made to the admission of the testimony of the two F. B. I. experts above referred to. But Jones' testimony being admissible, as we have pointed out, there was certainly no error in permitting these experts to testify that the paint and concrete specimens found in the trunk of his car came from the rifled safe. It was direct and persuasive evidence connecting the conspirators with the crime.

V. Finally the defendant assigns error upon the giving of Instruction No. 8. This instruction told the jury that the recent possession of stolen property is presumptive evidence that the person in whose possession it is found is guilty of the larceny thereof; that this presumption is rebuttable; that if it found there was a breaking and entering of the building described in the indictment and valuable things stolen therefrom, and if it found the defendant was in possession of any of the stolen property, and the presumption of guilt had not been rebutted, it might find him guilty of the crime charged.

The complaint against the instruction divides into two parts: that the instruction failed to point out that recent possession of stolen property is evidence of breaking and entering only when the breaking and entering and the larceny are part of the same transaction; and the instruction placed upon the defendant the burden of explaining his possession of stolen property to avoid the conclusion of guilt.

Under the circumstances here, it is apparent there is no

merit in the first attack upon the instruction. The State's evidence showed clearly that the larceny of the safe was a part of the breaking and entering. In State v. Gates, supra, we quoted with approval this from State v. Fortune, 196 Iowa 995, 998, 195 N.W. 740, 742: "The recent possession * * * of goods taken from a building feloniously broken and entered is an evidential fact and unless the evidence in relation to that possession and the explanation thereof creates a reasonable doubt of the defendant's guilt, a jury is justified in returning a verdict of guilty." State v. Gates, 246 Iowa 344, 352, 67 N.W.2d 579, 584.

In State v. Jensen, 245 Iowa 1363, 1373, 66 N.W.2d 480, 485, is this language: "Proof of defendant's possession of recently stolen property when it is also shown that the larceny took place in connection with a burglary is sufficient to warrant a conviction of breaking and entering." (Authorities cited.) "Also we have said that even though the possession be denied or explained, the truthfulness of such denial or explanation is for the jury. State v. Marshall, 105 Iowa 38, 41, 74 N.W. 763, 764."

If the safe here was stolen, it was as a result of the breaking and entering of the premises of the Hiland Potato Chip Company. There is substantial evidence defendant and his conspirators were in possession of it the next day. The instruction is not vulnerable to the attack made at this point.

The defendant also urges that the instruction on the presumption arising from the possession of recently stolen property threw on him the burden of disproving it. He seems to be of the opinion that, since he did not take the witness stand and offered no evidence, it was in some way unfair to permit the jury to consider the presumption. This contention has the virtue of novelty, but no other. It was defendant's right not to testify, or to deny possession or explain it. But this did not destroy the presumption. The right of an accused not to take the witness stand, or in any way to be compelled to give evidence against himself, is a shield against undue inquisitions. But it cannot be turned into a sword to strike down competent, material and possibly incriminating evidence against him.

We find no reversible error here in the use of the term "presumptive evidence" since we have said that it is synonymous with "prima-facie evidence", and that "presumption", "inference" and "prima-facie case" are interchangeable words having the same meaning. Bachelder v. Woodside, 233 Iowa 967, 976, 977, 9 N.W.2d 464, 469, and authorities cited. We think, however, that it is preferable, at least in criminal cases, to use either "inference" or "prima-facie case" as being more nearly expressive of the real meaning of the rule and less likely to confuse the jury. Unless specifically provided for by statute, we think the jury should not in the future be told that any evidence raises a presumption against a criminal case defendant; but rather, in an appropriate case, that unless denied or satisfactorily explained, it makes a prima-facie case against him, or, that such evidence is sufficient to sustain a conviction.—Affirmed.

All JUSTICES concur.