STATE OF IOWA, appellee, v. HENRY CAMERON, a/k/a Henry Salecker, appellant.

No. 50748.

(Reported in 117 N.W.2d 816)

November 13, 1962.

Edward Flattery and Mark McCormick, both of Fort Dodge, for appellant.

Evan Hultman, Attorney General, John H. Allen and John C. Cortesio, Assistant Attorneys General, and Howard Hamilton, Webster County Attorney, for appellee.

THOMPSON, J.—On December 1, 1961, a person giving the name of Henry Cameron purchased a pistol and box of shells at Kautzky's, a sports goods store in Fort Dodge. In payment he gave a check in the amount of $33.25. Leonard Will, the manager of the store, made the sale. The purchaser also signed an affidavit as required by Iowa law which gave his name, address—stated as Route 3, Bx. H 2, Fort Dodge, Iowa—his occupation, stated as "farmer", and told Will he resided near Lehigh, a small town in the vicinity of Fort Dodge. His age was stated as 37. Will was unable to positively identify the defendant as the man who gave him the check and received the merchandise. He said, however, that the defendant was very near the same stature as that of the man who gave him the check: "As near as I can recollect, this is the same man. * * * We take 30, 40, 50 checks a day and it does require a lot of remembering to state just exactly every one." The check was sent to the Union Trust and Savings Bank of Fort Dodge and was returned marked "No Acct." The defendant was shortly apprehended in Eldora and returned to Fort Dodge, where he was indicted, tried, convicted and sentenced for the crime of false uttering of a check in violation of Code section 713.3, and so brings his appeal to this court.

I.  The unusual nature of the check involved brings the first difficulty in the case, and leads to the inescapable conclusion that the judgment of the trial court must be reversed. We set out a copy of the check:

UNION  TRUST  &  SAVINGS  BANK $$\frac{72\text{--}1859}{713}$$

Lehigh
~~FORT DODGE~~, IOWA    12-1-61

Pay to the
  order of _____Kautzkys_____    $33.25

Thirty Three & 25/100 ------------Dollars

For _____    Henry Cameron
      Rt.  #3 Bx. H 2 Ft Dodge    Acc. #A2251

It will be at once observed that the location of the drawee bank, the Union Trust & Savings Bank, is nowhere set out as is

customary with bank checks. On the date line the words "Fort Dodge, Iowa" were printed; but the words "Fort Dodge" were obliterated and the word "Lehigh" substituted. If there is any place of location of the bank upon which the check was drawn, it is found only in the word "Lehigh". It will be noted that the indictment in the case refers to "a false check, drawn on the Union Trust & Savings Bank of Lehigh, Iowa". Without much doubt, the ordinary person looking at the check in question would conclude that it was drawn on a bank of that name in Lehigh. If we do not accept Lehigh as the location of the bank, there is no location, and so no definite bank, specified.

However, for a reason not explained in the record, the check was presented to the Union Trust and Savings Bank of Fort Dodge, was by it rejected and returned to the payee, Kautzky's, with the notation "Returned by Union Trust and Savings Bank, Fort Dodge, Iowa; returned unpaid for reason indicated—No Acct."

Why the check was presented to a bank in Fort Dodge upon which it was not drawn we are not told. We may speculate that in fact the Union Trust and Savings Bank of Fort Dodge had an office in Lehigh and kept all records of deposits, etc., in the home bank at Fort Dodge; but this is purely conjecture. We do not take judicial notice of the location of banks or their names in various places. On the record, we have only a check drawn on a bank in Lehigh or on a bank in an unnamed location, which was presented to a bank in Fort Dodge and by it returned unpaid. Much of the prosecution's case depends on a showing that the check was presented to the bank upon which it was drawn; but there is no proof of this.

Section 713.3 provides that one who with fraudulent intent makes, utters or gives any check drawn upon any bank and who secures anything of value therefor, and who knowingly does not have an arrangement, understanding, or funds with such bank sufficient to meet or pay the check so drawn, is guilty of the offense of false uttering of a check. Section 713.4 makes the fact that payment of a check is refused by the bank upon which it is drawn when presented in the usual course of business material evidence of such lack of arrangement, understanding or funds to

meet it. The trial court in its Instruction No. 7 paraphrased these sections, closing with these words: "You are further instructed that the fact that payment of said check when presented in the usual course of business shall be refused by the bank upon which it is drawn shall be material and competent evidence of such lack of arrangement, understanding or lack of funds."

The court was here telling the jury it might find a vital element of the case upon nonexistent evidence. In the absence of any showing that the check had been presented to a definite bank upon which it was drawn this instruction was erroneous and highly prejudicial. We discussed section 713.4, supra, in State v. Lansman, 245 Iowa 102, 60 N.W.2d 815; but in the absence of a definite showing that the check was presented to the bank on which it was drawn the section has no application.

The State says there was other evidence that the defendant had no account at any bank. This is true; there is testimony of a police officer that he so stated. But this hardly answers the question. The admission of erroneously prejudicial evidence, or an erroneous instruction which presumes there is evidence which there is not, is not cured by other evidence tending to prove the same point. We cannot know which the jury believed. Nor does the statement relied upon, that defendant admitted he had no account in any bank, quite meet the requirements of the statute in any event. There is included the necessity for the State to prove that the defendant not only had no account, but that he had no arrangement or understanding with the drawee bank to pay the check. Such an arrangement may be had even in the absence of sufficient funds.

II. A reversal is required by what has been said in Division I. However, the defendant urges other grounds for reversal which will in all probability arise upon another trial and so must be discussed. Section 755.17, Code of 1962, adopted by the Iowa legislature in 1959 by chapter 373, Acts of the Fifty-eighth General Assembly, provides: "Communications by arrested persons. Any peace officer or other person having custody of any person arrested or restrained of his liberty for any reason whatever, shall, before preliminary hearing and arraignment, except in cases of imminent danger of escape, permit that person, with

510

out unnecessary delay after arrival at the place of detention, to call, consult, and see a member of his or her family or an attorney of his or her choice. If a call is made, it shall be made in the presence of the person having custody of the one arrested or restrained. If the person arrested or restrained is intoxicated, or a person under eighteen years of age, the call shall be made by the person having custody. An attorney shall be permitted to see and consult the person arrested or restrained alone and in private at the jail or other place of custody. Before any arrested or restrained person is moved beyond the boundaries of this state by any peace officer or other person, for any reason whatever, he or she shall at all times be entitled to a reasonable delay for the purpose of obtaining counsel and availing himself or herself of the constitution and the laws of this state for the security of personal liberty. Nothing in this section shall be construed to amend or modify section 758.1 or 755.14. A violation of this section shall constitute a misdemeanor."

The defendant testified that when he was first taken to the police station in Fort Dodge after being returned from Eldora, he said "I would like to use the phone for a lawyer"; and that the officer who was booking him said "'later, after the formalities are through'." Shortly thereafter Lieutenant Lamb, chief of detectives, appeared. The defendant asked Lamb if he could get a lawyer and Lamb said "'later'." This latter statement was denied by Lieutenant Lamb, whose version was that the defendant at no time mentioned a lawyer; Lamb asked him if he wanted to make a telephone call and "he said no he didn't. He didn't have nobody to call at that time."

The defendant thinks the jury should have been instructed that if it found he requested the right to telephone for a lawyer and this was denied, any evidence thereafter procured from him or admissions made while he was so held incommunicado were inadmissible. So State's Exhibit 1, a sheet of paper on which the defendant signed his name several times at the request of Lieutenant Lamb, should have been excluded, in the view of the defendant's counsel, if the jury found his rights under section 755.17 were denied him. An instruction was requested. It has several patent defects, among which is that it emphasized the

defendant's evidence unduly, and chiefly that it goes too far. We think the true rule is analogous to that we stated in State v. Archer, 244 Iowa 1045, 1058, 58 N.W.2d 44, 51. There we discussed the application of requirements that after arrest the accused must be taken before a magistrate without unnecessary delay. In the instant case, the applicable statute would be section 757.7.

In the Archer case we said: "Of course, the fact that a suspect has been held illegally without charge or arraignment does not in itself make a confession involuntary and so a violation of due process, * * *. Such a situation is, however, one of the indicia of undue pressure."

While we are not here dealing with a confession in the strict sense of the word, we may use the rules governing confessions as a guide. State v. Sentner, 230 Iowa 590, 609, 298 N.W. 813, 821. See also State v. Koenig, 240 Iowa 592, 594, 36 N.W.2d 765, 766, and State v. Sampson, 248 Iowa 458, 463, 79 N.W.2d 210, 213, 214.

In view of a possible retrial, with similar evidence, we hold that an instruction should be given that any evidence or admissions obtained from the defendant while he was being held in violation of his rights under section 755.17, supra, if the jury found that such rights were in fact denied him, must have been given or made by him voluntarily; and that such denial of rights, if found to be a fact, would be one of the indicia of undue pressure and so of involuntariness, but would not necessarily be conclusive on that point.

III. Again the defendant contends error appears because he was not advised of his right to counsel, and because he was not told that any statements made or evidence furnished by him might be used against him. It appears that when on the day following his arrest he was brought before a magistrate for preliminary hearing, he was fully advised of his right to counsel. Article I, section 10, of the Iowa Constitution provides that in all criminal prosecutions the accused shall have the right to the assistance of counsel. This provision is implemented by Code section 761.1, which requires that when an arrested person is brought before a magistrate upon preliminary information he

shall be advised of his right to counsel in every stage of the proceedings and be given time to procure counsel. There is no dispute that the defendant here was so advised when brought before the magistrate, and we have never held that more than this is necessary.

The claim that the defendant should have been warned the specimen signatures, which were in fact used for comparison with the signature on the check, and any other statements or admissions, might be used against him we find is without merit. We have held squarely in opposition to this contention in State v. Marcus, 240 Iowa 116, 121, 34 N.W.2d 179, 182; State v. Mikesh, 227 Iowa 640, 644, 288 N.W. 606, 608, 609; and State v. Beltz, 225 Iowa 155, 162, 279 N.W. 386, 390. See also 23 C. J. S., Criminal Law, section 822, where it is said: "The general rule is that, in the absence of a statute to the contrary, an extrajudicial confession, voluntarily made, is not rendered inadmissible because no caution or warning was given to accused that the confession might be used against him, or because he was not advised of his constitutional or legal rights, such as his right to remain silent, or his right to consult counsel, or the effect of his confession and the magnitude of the crime with which he is charged."

IV. Defendant's requested Instruction No. 5 would have advised the jury that if it found he executed the signatures on Exhibit No. 1 under inducement or compulsion it should give no consideration to the exhibit or any oral testimony in connection therewith. The difficulty here is that the evidence does not match the instruction. The record shows this from the cross-examination of the defendant concerning his conversation with Lieutenant Lamb at the police station:

"We talked on a friendly basis and he talked to me about this check. He asked me to write my signature on this sheet of paper which has been identified as Exhibit No. 1 and I did so. He said he was not a handwriting expert, but that in his opinion the signatures looked the same.

"Q. When you wrote this, he told you he would send it down to the State Bureau and it would either clear you or be the basis for prosecution, didn't he? A. He did."

The record is devoid of any evidence of compulsion or in-

ducement, with the possible exception of the claimed denial of right to call an attorney which has been discussed in Division II above. Defendant's requested Instruction No. 5 was properly refused.—Reversed and remanded.

All JUSTICES concur except STUART, J., who takes no part.