STATE OF IOWA, appellee, v. MERLYN KULOW, appellant.

No. 50954.

(Reported in 123 N.W.2d 872)

OCTOBER 15, 1963.

Sheridan & Sheridan, of Waukon, for appellant.

Evan Hultman, Attorney General, John H. Allen, Assistant Attorney General, Joseph H. Samms, County Attorney, of Osage, and A. A. Beardmore, Assistant County Attorney, of Charles City, for appellee.

THOMPSON, J.—On May 31, 1961, five little pigs went to market. Thereby they put in motion the sequence of circumstances which brought about the present litigation. We are not told of, nor are we concerned with, the future history of the pigs; it is the check given in payment for them with which we are involved.

The defendant was at the time a resident of McIntire, and was engaged in the business of buying livestock, apparently under the name of McIntire Livestock Exchange. On the date set out, one Alvin Nolte took the five pigs to the Exchange, but found no one there. He left the pigs on the scales. Within an hour thereafter his wife went to the Exchange and found the defendant's wife there and shortly the defendant appeared. He made out a check, dated "5-31-1961", payable to Alvin Nolte, in the sum of $180.07, and delivered it to Mrs. Nolte. Nolte deposited it in his bank at Adams, Minnesota, and in about two weeks it was returned unpaid. Thereafter the defendant was indicted by the Mitchell County grand jury, was tried and found guilty by the trial jury, and judgment was entered on the verdict and sentence imposed. From this judgment and sentence we have the present appeal.

The defendant assigns several errors which he contends were committed by the trial court, to his prejudice. We shall

discuss those we find material, and further facts will be stated as they become important.

I. The indictment as returned by the grand jury charged the defendant with the crime of False Uttering of a Bank Check. On the day the case was reached for trial, the county attorney asked permission to amend by adding the words "with fraudulent intent" and also "in violation of the provisions of section 713.3 of the 1958 Code of Iowa as amended." Over the objection of the defendant this amendment was permitted, and this is the basis for the first assigned error.

It is the defendant's contention that the county attorney may not amend an indictment; that this can be done only by the grand jury which returned it. This argument lacks merit. Section 773.42 of the Code provides: "The court may, on motion of the state, and before or during the trial, order the indictment so amended as to correct errors or omissions in matters of form or substance." It is evident that the intent of the statute is that the prosecuting attorney may amend an indictment; it could hardly be contemplated that a trial would be adjourned while the grand jury was called into session to consider and return an amendment.

A further objection is that the indictment as returned did not charge a crime, and so the amendment had the effect of permitting a new indictment to be returned against the defendant when he was fully prepared for trial, and he should at least have been granted a continuance instead of being compelled to proceed at once to trial under what he thinks was a new charge.

Again we find no prejudicial error. Code section 773.3 (1) says: "The indictment may charge, and is valid and sufficient if it charges, the offense for which the accused is being prosecuted in one or more of the following ways: 1. By using the name given to the offense by statute." See also State v. Eichler, 248 Iowa 1267, 1275, 83 N.W.2d 576, 580, where we said: "It [the information] stated the name given to the offense by statute. This would be sufficient even as to the primary charge."

The original indictment here charged the offense by the name given by the statute. It was sufficient in itself, and the

amendment did no more than add surplusage. No harm resulted to the defendant.

■ II. Next the defendant asserts he received nothing of value when he gave the check in question. This apparently rests on the thought that the pigs had been left at his place of business some time before he gave the check in question; so they were in his possession, he owed Nolte for them, and he did no more by the check than to make a payment to a creditor on an account. But we think it sufficiently appears that Nolte expected a cash payment for the hogs; he left them only because he found no one at the Exchange, and his wife returned there within an hour to get the money for them. The pigs were left on the scales, where, presumably, they would be weighed in order to determine the price to be paid. There is no evidence whether Nolte would have taken the pigs away if payment had not been forthcoming, but we think there was a jury question whether the defendant did or did not receive something of value at the time he gave the check. The situation was such that it could well be found that title to the pigs did not pass until payment was made, and the parties so considered it.

■ III. By motion for directed verdict at the close of the State's case and at the close of all the evidence the defendant raised other questions, and now assigns error because of adverse rulings. No error can be predicated on the failure to grant the motion for peremptory verdict at the close of the plaintiff's evidence. The court may sustain such a motion but is not required to do so. State v. McLaughlin, 250 Iowa 435, 439, 94 N.W.2d 303, 305. But the motion was renewed at the close of all the evidence, and so the point is not important here.

■ IV. Some contention is made that the necessary intent to defraud is not present in the instant case, because the defendant did, several months later, pay the amount of the check to Nolte. But the intent must be decided as of the date the check was delivered and the property received. Repentance, even restitution, some eight months later came too late, so far as the criminal law is concerned. The moving finger had written on May 31, 1961.

V. We turn then to the check itself, and the evidence

whether the requirements of proof as to its presentation and nonpayment at the drawee bank have been met. The defendant testified that before writing the check he called the Riceville State Bank, the drawee, and received assurance that it would be honored. Two employees of the bank were called in 'rebuttal. Their testimony is that they did not remember such a call.

It was incumbent upon the State to prove a violation of the governing statute, section 713.3, beyond a reasonable doubt. We quote the material part of the statute: "Any person who with fraudulent intent shall make, utter, draw, deliver, or give any check, draft, or written order upon any bank, person, or corporation and who secures money, credit, or thing of value therefor, and who knowingly shall not have an arrangement, understanding, or funds with such bank, person, or corporation sufficient to meet or pay the same, shall be guilty of a felony, if such check, draft, or written order shall be for the sum of twenty dollars or more, * * *."

At this point the State relies on section 713.4, which is also quoted: "The fact that payment of said check, draft, or written order when presented in the usual course of business shall be refused by the bank, person, or corporation upon which it is drawn, or that it be protested for nonpayment for lack of such arrangement, understanding, or funds with which to meet the same, shall be material and competent evidence of such lack of arrangement, understanding, or lack of funds." The difficult question is whether the State made sufficient proof of the presentation of the check to the drawee bank and that payment was there refused. The check, which was in evidence, does not have attached to it the usual printed slip, bearing the name of the drawee bank, with the notation; "Returned Unpaid for Reason Indicated", with a check mark before the words "Insufficient Funds." It does have on its face the stamped words "Presented" twice Jun 9 '61" and under these the figures "75-1190". This is evidently the number of the Farmers State Bank of Adams, in which it was first deposited. So the notation is that of the Adams bank. Passing the objection that the notation would be hearsay, it must be observed that there is lacking a showing as to where and to whom the check was presented. There is left only a pos-

sible inference that it was presented to the bank upon which it was drawn; but it is evident the Adams bank did not itself, by any of its personnel, present it to the drawee bank. Stamps on the back show the check was sent by the Adams bank to the Merchants National Bank of Cedar Rapids, and by it forwarded to the First National Bank of Riceville for collection. The check itself, with its various stamps, shows nothing as to presentation to or dishonor by the Riceville State Bank, the drawee, unless we adopt the inference above referred to.

There is also the testimony of Hilda Ardell Nolte, the wife of the payee, that the check was returned unpaid; again no direct showing that it was ever presented to the drawee bank. However, some more significant and direct evidence on the point is found in the cross-examination of the defendant, who testified in his own behalf. From this it appears that the defendant went to the drawee bank to inquire why his check had not been honored. He talked with "the banker", Mr. Bringgold, and told him someone at the bank had promised the check would be paid when presented. This then appears: "* * * he did not know the reason why they didn't honor it, the woman." Also, "I went to them and talked to them about it. The woman that I talked to wasn't in the bank the day that this check came in. That was what Mr. Bringgold told me. She was the only one that knew the arrangement we had."

From this the deduction could well be made that the check in fact reached the bank, and was not honored for reasons unknown to Mr. Bringgold, but the defendant concluded it was because the woman with whom he claimed to have made an arrangement for payment was not at the bank when the check reached it. It is some evidence, not entirely clear or satisfactory, that the check was in fact presented and payment refused.

Whether it was sufficient we shall not decide, since the case must be reversed for error particularized in the following division. However, we take this occasion to say that there seems no reason for the failure of prosecuting attorneys to prove this element of their case—the presentation and refusal of payment by the drawee bank—by evidence that could hardly be challenged, if such is the fact. In most cases the testimony of some

officer or employee of the drawee bank is readily available, and it would furnish the best evidence of the dishonor of the check because of insufficient funds. We have recently been compelled to reverse a judgment of conviction in a similar case because of failure of proof on this point which it seemed could have been easily procured. State v. Cameron, 254 Iowa 505, 117 N.W.2d 816. In the case at bar, two employees of the drawee bank were called as witnesses for the State, but were not asked about presentation of the check, refusal of payment or insufficiency of funds. Generally there should be no occasion for the determination of close questions of the sufficiency of the evidence on this point such as we are presented with here.

VI. The court gave the following instruction No. 10, dealing with the question of the significance of section 713.4 and its application to the case:

"You are further instructed that a showing by the State that the check, Exhibit P-5, was deposited by the payee, Alvin Nolte, in his bank, Farmer's State Bank, Adams, Minnesota, and that said check was later returned to the said Alvin Nolte, by said Farmer's State Bank, unpaid, if you so find, then an inference or presumption arises that the defendant, Merlyn Kulow, knowingly did not have an arrangement, understanding or funds with the Riceville State Bank, sufficient to meet or pay the same, and the State has proved a 'prima facie' case in this respect.

"By 'prima facie' is meant a permissible presumption that the defendant, Merlyn Kulow, knowingly failed to have an arrangement, understanding or funds with the Riceville State Bank sufficient to meet or pay the check in question, such permissible presumption, however, is not conclusive, but subject to being rebutted or explained. In the absence of contrary evidence it will support a finding that the defendant knowingly did not have an understanding, arrangement, or funds with said bank sufficient to meet or pay said check.

"The evidence offered to rebut or explain the presumption arising against the defendant in this respect, should, under the instruction as to burden of proof, be considered in connection with the presumption, and any evidence supporting the presumption and the question of the claimed failure on the defend-

ant's part, in knowingly failing to have an arrangement, understanding or funds with said Riceville State Bank sufficient to meet or pay the check in question, so determined."

To this the defendant excepted, both before it was read to the jury and later in his motion for a new trial. The exceptions covered many contentions. Among them we find that the instruction itself would not be sufficient to permit the case to go to the jury, that it was an incorrect statement of the law, that it permitted the jury to find the defendant guilty even though the State failed to prove the elements of the crime charged, and that it told the jury that under the evidence the defendant would be guilty if Nolte deposited the check in the Adams bank and it was later returned to him unpaid by that bank.

We are constrained to agree with this assignment of error. The instruction entirely omits the necessity of showing that the check was presented to the drawee bank and payment refused. The court was apparently attempting to follow section 713.4, supra, and to tell the jury its significance. But it omitted that part of the section "when presented in the usual course of business shall be refused by the bank * * * upon which it is drawn, or that it be protested for nonpayment." This is the gist of the section. We have discussed in Division V above the necessity for some showing that the check was in fact presented to the drawee bank and payment refused; but under the instruction given by the court this element was not required. All that was needed under Instruction No. 10 was that the check be deposited in the Adams bank and then returned unpaid. It might have been presented to the wrong bank, as in State v. Cameron, supra; or for other reasons might never have reached the Riceville State Bank. He who is accused of a crime is entitled to have the State prove each element by evidence that leaves nothing to speculation or conjecture. Permissible inferences of fact may be drawn; but here the instruction entirely omitted a most essential element of proof.

Further error is predicated upon the use of the words "prima facie" in the instruction. It is urged that the court thereby placed the burden on the defendant to prove his innocence. This contention goes too far. In State v. Lansman, 245

Iowa 102, 106, 60 N.W.2d 815, 817, we said that when the State showed the check was returned by the drawee bank it had made a prima facie case on which it was entitled to go to the jury. But the court is now of the opinion that the instruction in this class of cases relating to the meaning of section 713.4 should be in the terms of the statute: that is, that when the State has shown by competent evidence, if the jury so finds, that the check was presented to the drawee bank and payment refused, such showing is "material and competent evidence" of a lack of arrangement, understanding, or lack of funds.

We call attention also to the repeated use of the word "presumption" in Instruction No. 10. We said in State v. Hobbs, 252 Iowa 439, 449, 107 N.W.2d 242, 247: "Unless specifically provided for by statute, we think the jury should not in the future be told that any evidence raises a presumption against a criminal case defendant; * * *." It is true that in following language we sanctioned the use of the words "prima facie case"; but we are now of the opinion these words also should not be used unless they are found in the language of an applicable statute. This is not the case in section 713.4.

VII. We find no merit in the other errors assigned.—Reversed.

GARFIELD, C. J., and LARSON, PETERSON and SNELL, JJ., concur.

HAYS, J.—I concur in the foregoing opinion and in reversal except that, as to Division V, I would hold the evidence insufficient to justify a submission of the issue of presentation and refusal to pay the check, and would order the defendant discharged.

MOORE, STUART and THORNTON, JJ., join therein.