**STATE of Iowa, Appellee,**

v.

**James A. JOHNSON, Appellant.**

**No. 54926.**

Supreme Court of Iowa.

April 13, 1972.

Charles A. Stream, Oskaloosa, for appellant.

Richard C. Turner, Atty. Gen., Robert Jacobson, Asst. Atty. Gen., and Hugh Faulkner, Oskaloosa, County Atty., for appellee.

MASON, Justice.

James A. Johnson was charged by county attorney's information with the crime of false drawing and uttering of a check for the amount of $20 in violation of section 713.3, The Code. A Mahaska county jury convicted him of the crime charged. Defendant's motions in arrest of judgment and for new trial were overruled and he was sentenced to the state penitentiary for not to exceed seven years.

Defendant appeals from this judgment assigning five errors relied on for reversal. In one division of his written brief he argues the court erred in overruling his motions for directed verdict made at the close of the State's evidence and renewed at the close of all evidence and in arrest of judgment. In another, defendant contends the court erred in overruling his motion for new trial inasmuch as an examination of the entire record discloses he did not have a fair and impartial trial. In the remaining division he contends the sentence imposed is excessive.

There is no dispute as to the factual background leading to the prosecution. June 27, 1970, Johnson gave James A. Garrett, operator of an Oskaloosa pool hall, his check for $20 drawn on a local bank in payment of his pool hall account of approximately $16 and the price of a bottle of beer. Johnson was given the difference in change. In completing execution of the check in Garrett's presence, defendant wrote the figure 72455 as his purported bank account number on the check and signed it as drawer. Garrett stamped his indorsement on the check and took it to the drawee bank the following day for deposit. The next morning the bank notified Garrett it did not have an account with defendant. Garrett picked up the check which the bank had stamped "no account" and turned it over to the Oskaloosa police who filed charges against defendant.

I. As stated, the information is based on section 713.3 which provides in part:

"False drawing or uttering of checks. Any person who with fraudulent intent shall make, utter, draw, deliver, or give any check, draft, or written order upon any bank, person, or corporation and who secures money, credit, or thing of value therefor, and who knowingly shall not have an arrangement, understanding, or funds with such bank, person, or corporation sufficient to meet or pay the same, shall be guilty of a felony, if such check, draft, or written order shall be for the sum of twenty dollars or more, and shall on conviction thereof be punished as in section 713.1; * *."

■ Essential elements of an offense under this section are: (1) intent to defraud; (2) securing money, credit or other thing of value by means of a check, draft or written order; and (3) knowingly not having any arrangement, understanding, or funds with the bank, person or corporation upon which the check or other instrument is drawn sufficient to meet or pay the same. State v. Kimball, 176 N.W. 2d 864, 865, (Iowa 1970); State v. Lansman, 245 Iowa 102, 106, 60 N.W.2d 815, 817.

Defendant's argument in his first division is based on the contention since the State offered no proof of intent to defraud other than that contemplated by section 713.4, The Code, 1966, any presumption which would arise from this section was effectively and conclusively rebutted; hence, there was nothing to submit to the jury.

■ II. Johnson's first contention his motion for a directed verdict made at the close of the State's evidence should have been sustained is without merit since error cannot be predicated on failure to grant a motion for directed verdict made at the close of the State's evidence. State v. McLaughlin, 250 Iowa 435, 439, 94 N.W.2d 303, 305; State v. Kulow, 255 Iowa 789, 793, 123 N.W.2d 872, 875; State v. Mabbitt, 257 Iowa 1063, 1065, 135 N.W.2d 525, 527; State v. Everett, 157 N.W.2d 144, 146, (Iowa 1968); State v. Werner, 181 N.W. 2d 221, 222, (Iowa 1970); and State v. Smith, 195 N.W.2d 673 (Iowa, March 16, 1972).

■ III. In considering defendant's second and third assignments challenging sufficiency of evidence to sustain the verdict on which his conviction is based, the evidence is viewed in the light most favorable to the State and the court accepts as established all reasonable inferences tending to support action of the jury. It is necessary to consider only the supporting evidence whether contradicted or not.

■ In a criminal action the cause should be submitted to the jury and the court should not direct a verdict of acquittal if there is any substantial evidence reasonably tending to support the charge.

■ Either direct or circumstantial evidence, or both, on each and every essential element to conviction is sufficient to warrant a finding of guilty, if it satisfies triers of facts beyond a reasonable doubt. For this purpose circumstantial evidence may be equal in value to and sometimes more reliable than direct evidence. However, where circumstantial evidence alone is relied on as to any one or more of essential elements the circumstance or circumstances must be entirely consistent with defendant's guilt and wholly inconsistent with any rational hypothesis of defendant's innocence and so convincing as to exclude a reasonable doubt that defendant was guilty of the offense charged.

In support of the foregoing statements of law see State v. DeRaad, 164 N.W.2d 108, 109–110, (Iowa 1969); State v. Brown, 172 N.W.2d 152, 153–155, (Iowa 1969), and authorities cited in these opinions.

IV. In written brief and argument defendant sets out section 713.4, The Code, 1966, which he maintains the State relies on to generate a jury issue on the question of defendant's intent to defraud. This section as it appeared in the 1966 Code was in this language:

"Evidence of violation. The fact that payment of said check, draft, or written order when presented in the usual course of business shall be refused by the bank, person, or corporation upon which it is drawn, or that it be protested for nonpayment for lack of such arrangement, understanding, or funds with which to meet the same, shall be material and competent evidence of such lack of arrangement, understanding, or lack of funds."

As pointed out, defendant argues any presumption arising from this section relevant to defendant's intent to defraud was conclusively rebutted.

However, this section was repealed by the First Session, Sixty-third General Assembly, chapter 302 and the following section, effective July 1, 1969, was enacted in lieu thereof:

"False drawing or uttering of checks. As against the maker or drawer of a check, draft, or written order, payment of which is refused by the drawee because of insufficient funds of the maker or drawer or because the maker or drawer has no account with the drawee, the fact that pay-

ment of such check, draft, or written order has been refused by the drawee shall be prima facie evidence of intent to defraud and of knowingly not having an arrangement, understanding, or funds with such bank, person or corporation sufficient to meet or pay the check, draft, or written order, *provided* such maker or drawer shall not have paid the holder thereof the amount due thereon within ten days after receiving written notice by certified mail or notice in the manner of serving an original notice that such check, draft, or written order has not been paid by the drawee." (emphasis supplied)

This statute now appears as section 713.4 of the Code 1971.

Nothing in the record before us or in the transcript filed could be claimed to serve as a basis for the contention the State relies on the section in effect June 27, 1970, as creating a presumption bearing on defendant's intent to defraud. In fact, there is no record of any attempt to comply with the proviso of the section. Neither the State in presenting its evidence or in argument before this court nor the trial court in ruling on objections or in instructions to the jury referred to this section either directly or indirectly.

The State offered testimony of Herbert Sauter, president of drawee bank, to the effect the drawee bank did not have any account numbers corresponding to the one placed on the check by defendant as all account numbers with the bank were in six digits with the highest commencing with a "four." The State also presented testimony through this witness that defendant never had an account in the drawee bank and had made no arrangement with Sauter or any one else associated with the bank to make the check good.

It is obvious Sauter's testimony was offered in connection with the State's burden to prove beyond a reasonable doubt defendant knowingly did not have any arrangement, understanding, or funds with the drawee bank sufficient to meet or pay

the same—the third essential element of the offense charged. Defendant does not challenge this testimony.

Likewise, the State offered Garrett's testimony in connection with its burden of proving the second essential element of the offense mentioned in division I, supra. His testimony bearing on this element is undisputed. Evidence was also offered through this witness that Johnson placed a figure on the check as his purported bank account number before delivering it to the witness.

■ It cannot logically be argued the foregoing evidence was insufficient to generate a jury question on the two elements mentioned.

However, defendant's attack is directed against submission to the jury of the issue of his intent to defraud. On the record before us he was not faced with the necessity of rebutting any statutory presumption arising from section 713.4 of the Code, 1966, since, as pointed out, the State does not rely on any statutory presumption as an aid in sustaining its burden of proving defendant's intent to defraud. Instead, the State through testimony of Garrett and Sauter made a positive showing·defendant received a thing of value by means of the check given and adduced an uncontroverted explanation why payment of the check was refused by the drawee bank when presented. Johnson's act in placing a false bank account number on the check, his drawing and completing it for delivery to Garrett carried with it a representation he had funds or credit with the bank to meet the same.

■ Fraud may arise from facts and circumstances, and an intent to defraud may properly be inferred from circumstances, words, and actions shown in evidence. State v. Lansman, 245 Iowa at 107, 60 N.W.2d at 818.

Evidence which we said earlier was sufficient to generate a jury question as to the second and third essential elements of

the crime charged also served to develop facts and circumstances of a character that a reasonable man could draw from them the inference of the existence of defendant's intent to defraud Garrett on June 27, 1970, the third essential element to be proved. See McCormick on Evidence, section 306.

■ Although the burden is not on defendant to prove himself not guilty, this was the evidence defendant was required to meet and overcome. It was not conclusively rebutted. The trial court did not err in submitting the charge to the jury.

In connection with the foregoing statements see State v. Lansman, 245 Iowa at 107–108, 60 N.W.2d at 818–819; State v. Kulow, 255 Iowa at 793–795, 123 N.W.2d at 875–876.

V. In support of his fourth assignment defendant maintains he was denied a "fair and impartial trial" by the court's exclusion of evidence tending to show lack of fraudulent intent.

The factual basis for this assignment occurred on cross-examination of Garrett who testified that "on more than one occasion Butch Johnson [defendant] had given me checks in the past which had not cleared the bank. In each case Butch Johnson's father paid them." When defendant attempted to develop this aspect of the evidence further, the State's objections to the evidence as irrelevant and immaterial were sustained. In a colloquy between court and counsel in the jury's absence, defendant's counsel advised the court he knew restitution was not a defense but insisted he was entitled to show restitution had been made as bearing upon defendant's intent to defraud; that his purpose in pursuing this line of questioning was to show restitution of the check involved was made by defendant's father.

Defendant was persistent in his attempt to make it clear he was not offering evidence of restitution as a basis for exonerating himself from criminal responsibility or as constituting a complete defense to the charge, but was offering it for the limited purpose of aiding the jury in determining whether defendant acted with an intent to defraud.

In urging motion for directed verdict made at the close of all evidence, defendant restated his contention that the court was in error in not permitting him to show restitution had been made as indicating lack of intent.

As to the duty of the proponent to make known to the trial court the limited purpose for which he claims the excluded testimony admissible see Lemke v. Mueller, 166 N. W.2d 860, 870–871, (Iowa 1969). Defendant preserved any claimed error as to the exclusion of evidence in accordance with the law announced in the cited case.

The thrust of defendant's argument that proper testimony was wrongfully excluded is two-pronged. First, he asserts evidence of prior transactions, similar to that forming the basis of prosecution, is admissible for the purpose of negativing fraudulent intent. Second, it is urged evidence of restitution is admissible, not as a defense, but to show along with other relevant facts, a lack of fraudulent intent.

We consider the above arguments in reverse order.

The general rule noticed by defendant is stated by the author of the annotation in 10 A.L.R.3d 572, 573, in this language:

"It is the general rule that restitution or subsequent restoration of property or money obtained by false pretenses is not a defense to a prosecution for fraud or false pretenses. * * *."

" * * * [I]t should be brought to the reader's attention that a distinction exists between those cases in which evidence of subsequent payment or restoration has been held admissible on the issue of guilt or want of intent, and cases which hold that such evidence is admissible or inadmissible where the general rule that restitution or repayment is not a defense is involved."

The cases which defendant cites for support on this point can be found in Annot., 10 A.L.R.3d 572, 575, section 4, where it is said:

"Although there is limited authority considering the question of the admissibility of subsequent payments as evidence of lack of intent to defraud, courts which have been confronted with this problem have permitted such evidence to be introduced where its purpose was not to demonstrate restitution or reimbursement to the victim, but instead, to show that there was no actual intent to defraud. Such courts, although for the most part recognizing the general rule that restoration is not a defense to a criminal charge, hold that such evidence is admissible in order to aid the jury in determining whether the defendant did in fact act in good faith." Cited therein are People v. Braver, 229 Cal.App.2d 303, 40 Cal.Rptr. 142, 10 A.L.R.3d 565; People v. Hand, 127 Cal.App. 484, 16 P.2d 156; State v. Mason, 62 Mont. 180, 204 P. 358; State v. Johnson, 195 N.C. 506, 142 S.E. 775; and Armstrong v. State, 123 Tex. Crim. 372, 59 S.W.2d 140.

This statement, in agreement with the annotation, appears in 32 Am.Jur.2d, False Pretenses, section 70:

"Although subsequent restitution or repayment is not a defense when money is obtained by false pretenses, evidence of repayment or restitution may be admissible to show that the accused had entered into the transaction involved in good faith and without an intent to defraud."

State v. Scott, 105 Utah 31, 140 P.2d 929, 932, is cited in 35 C.J.S. False Pretenses § 51c, as support for this statement appearing in the footnote of that encyclopedia:

"In prosecution for making, drawing, uttering, and delivering a check with intent to defraud, evidence as to fact that check was paid by accused within a day after delivery, although no defense to prosecution if he had necessary intention to defraud at time check was issued, would be admissible as tending to prove that there was no intention to defraud."

This statement from People v. Braver, supra, the subject of the annotation in 10 A.L.R.3d at 569, is strong support for defendant's position:

"It is, of course, true that when money is obtained by the use of false pretenses, subsequent restitution or repayment is not a defense. * * * [citing authorities] In the present case, however, the evidence of payments made was not offered to show restitution but, rather, was offered in support of the defendant's claim that no crime had been committed because he had entered into the transaction in good faith and without an intent to defraud anyone. In People v. March, 58 Cal.2d 732, at page 736, 26 Cal.Rptr. 300, at page 303, 376 P.2d 300, at page 303, the Supreme Court stated: 'Under section 484 of the Penal Code an essential element of that offense [obtaining money by false representations] is that defendant had the specific intent to defraud. * * * It follows, as a matter of course, that a defendant is entitled, in such a case, to introduce proper evidence that tends to establish that he did not, in fact, possess the intent required by the code section. Such evidence may be introduced either to controvert the evidence produced by the prosecution, or to establish affirmatively the lack of the required criminal intent. It is elementary that if the prosecution can introduce evidence of a required specific intent, the defendant must be given the equal privilege of showing the lack of such intent [citation].'"

In support of the trial court's ruling the State relies on this statement from State v. Kulow, 255 Iowa at 793, 123 N.W. 2d at 875:

"Some contention is made that the necessary intent to defraud is not present in the instant case, because the defendant did, several months later, pay the amount of the check * * *. But the intent must be decided as of the date the check was de-

livered and the property received. Repentance, even restitution, some eight months later came too late, so far as the criminal law is concerned. * * *."

However, examination of the abstract of record filed in Kulow discloses that the question of admissibility of evidence bearing on defendant's subsequent payment to Nolte for the five pigs was not in issue. The trial court had admitted evidence of defendant's later payment and the statement quoted, supra, apparently referred to defendant's contention intent to defraud had not been established in view of the repayment and he was therefore entitled to a directed verdict. Of course, the fact of repayment, if admissible, was for the limited purpose of aiding the jury in determining whether Kulow had an intent to defraud and was not a complete defense to the criminal charge. The question presented by the case before us was not involved in Kulow and we do not deem it determinative of the issue considered in this division.

After Garrett had testified as to previous checks given to him by defendant as mentioned earlier and in his attempt to pursue this phase of the case defendant, in cross-examining Garrett, offered exhibit D-1, a check drawn in the amount of $20 August 11 to "Garrett's Rec" by Carl A. Johnson, father of defendant. This notation appeared on the face of the check: "Memo: Paid for James Johnson Check." As stated, the State's objection was sustained.

██ In light of authorities cited, supra, from other jurisdictions, we hold evidence relating to restitution, although not a defense to a criminal charge of false making and uttering of a bank check, is admissible as relevant on the question of the drawer's intent to defraud.

██ Where, as here, after evidence bearing on restitution had been excluded on the State's objection and counsel then made known to the trial court the limited purpose for which he claimed this excluded evidence was admissible, it was reversible error to continue to exclude such evidence. It would be proper to instruct the jury on the limited purpose for which it might consider such evidence. See Kiger v. Meehan, 253 Iowa 746, 751–753, 113 N.W.2d 743, 747–748.

We do not reach the possible effect of section 713.4, as amended, on the question under consideration.

VI. Defendant's first argument stated earlier in which he challenges the court's rulings on admissibility of evidence of past transactions between defendant and Garrett involving "no fund" checks also arose during Garrett's cross-examination.

At this trial stage defendant undertook to adduce evidence that Garrett knew from previous transactions had with defendant that the check upon which the prosecution was based was of no account; that none of the previous checks given to Garrett by Johnson were paid through the bank on which drawn but in each case, by defendant's father. In each instance the State's objection as irrelevant and immaterial and having no bearing on the issue in the case was sustained.

After defendant advised the court he was offering such evidence only as bearing on Johnson's intent to defraud, the ruling stood.

We quote Uniform Criminal Instruction 510.5 prepared by the Special Committee on Uniform Court Instructions of the Iowa State Bar Association, which is apposite here:

" * * * [I]t must be shown by the evidence beyond a reasonable doubt, that the defendant, by the alleged drawing, uttering or delivery of the alleged false check, did thereby defraud [James A. Garrett] and secure from him things of value. In connection with proof of intent to defraud, it must appear by the evidence beyond a reasonable doubt that [James A. Garrett] at the time he accepted the said check and parted with things of value was deceived thereby; that is, that said [James A. Garrett] did not know that said check was fraudulent, if you find that it was."

Certainly, evidence of previous transactions involving checks given by defendant to Garrett was admissible to aid the jury in determining whether Garrett, at the time he accepted the check and parted with things of value, was deceived thereby. The offered evidence met the test of relevancy suggested in State v. Hopkins, 192 N.W.2d 747, 752, (Iowa 1971). It was error to exclude consideration of such evidence for the limited purpose offered.

Although the State did not rely on similar transactions to prove defendant's intent to defraud in the case before us, there is support for our position in State v. Mason, 136 Iowa 554, 556, 114 N.W. 30, 31, where the court said it followed as a matter of common fairness as well as legal necessity, that when the matter from which the state proposed to argue existence of criminal intent was given to the jury, the accused should have been allowed to give his explanation of it and show, if he could, its innocent character. For the purpose of determining whether defendant obtained the money by intentionally false representations, it was material to know defendant's relations to the bank and the manner in which the business between them had been carried on.

VI. In his remaining division defendant urges that the sentence imposed is so unrealistic that it presents an abuse of discretion.

The Supreme Court has the power and authority to reduce punishment, section 793.18, The Code, but does so only where an abuse of discretion is shown or there has been a failure to follow a specific statutory provision. State v. O'Dell, 240 Iowa 1157, 1160–1161, 39 N.W. 2d 100, 102; State v. Simpson, 254 Iowa 637, 645, 118 N.W.2d 606, 611; State v. Kulish, 260 Iowa 138, 145, 148 N.W.2d 428, 433; State v. Johnson, 167 N.W.2d 696, 701, (Iowa 1969). The indeterminate sentencing act, section 789.13, requires the sentence, if it imposes a penitentiary term, shall not be fixed by the court, but it is imposed by law. State v. Hammond, 217

Iowa 227, 229, 251 N.W. 95, 96; State v. Kulish, 260 Iowa at 145, 148 N.W.2d at 433. Under 713.3 and 713.1 jointly, the sentence pronounced could either be imprisonment in the penitentiary for not more than seven years, a $500 fine, imprisonment in county jail for not more than one year, or both of the last two alternatives. The judgment imposed here did not exceed the statutory maximum.

The trial court had the right within the limitation provided for by section 713.1 to fix such punishment for the crime as it thought defendant deserved. State v. De-Raad, 164 N.W.2d 108, 112, (Iowa 1969).

We do not have the benefit either in the printed abstract or transcript of any presentence investigation that might have been made in this matter. Although the sentence seems quite severe in view of the amount of the check, we cannot say there was an abuse of discretion.

For errors occurring during the trial in excluding evidence, the case is reversed.

All Justices concur.