STATE of Iowa, Plaintiff-Appellee,

v.

Raymond George GEINZER,
Defendant-Appellant.

No. 86–725.

Court of Appeals of Iowa.

March 31, 1987.

Monty R. Bertelli, Cedar Rapids, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Daniel W. Perkins, Asst. Atty. Gen., and Candace J. Hein, Asst. Linn Co. Atty., for plaintiff-appellee.

Heard by OXBERGER, C.J., and DONIELSON and SNELL, JJ.

SNELL, Judge.

On October 4, 1985, the appellant, Raymond George Geinzer, was charged by trial information with operating a motor vehicle while under the influence of an alcoholic beverage, second offender. *See* Iowa Code § 321.281 (1985). Trial commenced on March 10, 1986, and two days later the jury returned a verdict finding Geinzer guilty as charged. Following unsuccessful motions for new trial and in arrest of judgment, Geinzer was fined $500, given a thirty-day sentence, suspended on conditions, and placed on probation for one year. This appeal followed. Our review is limited to the correction of errors at law. Iowa R.App.P. 4.

Geinzer poses a single issue for our review. He contends the district court erred in admitting evidence of an intoxilyzer breath test notwithstanding the State's failure to demonstrate the accuracy and reliability of the test results. The State argues it met all the conditions for admissibility imposed by statute and that the district court ruling, if error, was harmless.

Iowa Code Chapter 321B.15 (1985) mandates that when taking a sample of a person's breath for the purpose of determining alcohol concentration, an administering officer must use "methods approved by the commissioner of public safety." These "methods" are set out at 680 Iowa Administrative Code § 7.2 (1986) and include a requirement that "[t]he operator of the intoxilyzer shall proceed in accordance with the instructions furnished by the Iowa department of public safety's criminalistic laboratory...." A showing that these methods were followed is a foundational requirement for the test result's admission into evidence at trial. Iowa Code § 321B.28 (1985). Among the purposes served by these procedural requirements is the guarantee that the test results are sufficiently accurate for use in judicial proceedings. *State v. Wolfe*, 369 N.W.2d 458,

459 (Iowa Ct.App.1985); *see State v. Schlemme*, 301 N.W.2d 721, 723 (Iowa 1981).

██ In the case at bar, Geinzer agreed to submit to a breath test following his arrest on September 20, 1985. The administering officer proceeded in accordance with instructions furnished by the department of public safety in the form of an operational checklist. While conducting the pre-test "air blank" step, however, the intoxilyzer registered a reading of .01 rather than the required .00 reading. Instead of following the usual procedure, albeit a procedure not mandated by the operational checklist, and repeating the "air blank" step to check for possible error, the officer proceeded to administer the breath test to Geinzer. The test resulted in an alcohol concentration reading of .274. The printout card showing this reading was admitted into evidence at trial over Geinzer's objection. The administering officer testified at trial that obtaining an improper reading during the pre-test procedures would affect the test results, but was unable to state precisely what that effect would be. Dr. Regis Weland, an expert witness called by Geinzer to testify regarding the operation of the intoxilyzer, stated that the incorrect "air blank" reading rendered the test results "unreliable." The present appeal thus asks us to determine the implications for the admissibility issue of the fact that the department of public safety's instructions do not contain any guidance in the event the intoxilyzer fails to function properly.

We think it clear that when the legislature conditioned the admissibility of breath test results on a showing that "methods approved by the commissioner of public safety" were used in administering the test, it was concerned with the accuracy and reliability of the results. *Wolfe*, 369 N.W.2d at 459; *see Schlemme*, 301 N.W.2d at 723. In the present case, it is undisputed that the intoxilyzer was not functioning properly. In light of this fact and the legislative concern with reliability and accuracy, it would be anomalous for us to hold that the mere following by rote of the prescribed methods is sufficient to render the test results admissible under Iowa Code section 321B.28. As Judge Donielson definitively stated in *Wolfe*, "[i]n order to admit the results of a [breath] test into evidence, the State must demonstrate compliance with the procedural requirements [of Chapter 321B], *and* the accuracy and reliability of the particular test results." *Wolfe*, 369 N.W.2d 458, 459 (Iowa Ct.App. 1985) (emphasis added). Although the State demonstrated the procedural compliance in this case, it failed to prove the accuracy and reliability of the test results. Quite to the contrary, the evidence strongly suggests that the test results were unreliable. The admission of the test results was therefore error.

██ The State contends that any such error was harmless. This argument is based on three grounds. First, the State argues that the evidence is sufficient to support Geinzer's conviction even absent the test results. Second, it is maintained that even discounting the results by the erroneous reading of .01 leaves a reading sufficiently high to support the conviction. Finally, the State urges us to affirm because the test results were noted on the operational checklist which was in evidence without objection prior to the erroneous admission of the printout card at issue here. The State's first contention flounders on our law which states that the admission of highly-prejudicial evidence is not cured by other evidence tending to prove the same fact. *State v. Cameron*, 254 Iowa 505, 509, 117 N.W.2d 816, 818 (Iowa 1962); *cf. State v. Fuhrmann*, 257 N.W.2d 619, 623 (Iowa 1977) (highly prejudicial testimony, improperly admitted, not cured by admonition to jury to disregard). This is because we cannot know which evidence persuaded the jury to convict. *Cameron*, 254 Iowa at 509, 117 N.W.2d at 818. The State's second contention assumes that the malfunctioning intoxilyzer merely caused the printout to read .01 too high. The record contains no evidence, however, that this was the effect of the malfunction. In fact, the administering officer testified that, although he knew the erroneous reading would affect the test results, he did not

know what the nature or magnitude of that effect would be. The State's final contention is grounded on the legal principle that no prejudice issues from the admission of evidence where substantially the same evidence is elsewhere in the record without objection. *E.g. State v. Hood,* 346 N.W.2d 481, 484 (Iowa 1984). We think, however, that there is a significant qualitative difference between the intoxilyzer printout card, with the presumption of reliability which accompanies it, and simple handwritten notation of the test results on the procedural checklist. In short, we cannot say that no prejudice arose from the erroneous evidentiary ruling in this case.

We hold the admission of the test results to be prejudicial error. The judgment of the district court must therefore be reversed and this case remanded for a new trial consistent with the opinions expressed herein.

REVERSED AND REMANDED FOR RETRIAL.