STATE of Iowa, Appellant,

v.

Linda Ann HORNIK, Ryan McCallister, Wendy Frantz, Todd Michel, Peter Andersen, Sandra Davis, Dennis Dorman, Daniel Cox, Andrew Jaquez, Karmon Coleman, Corey Wilson, Cathryn Daman, Jose Miranda, Mynor Garcia, Adrienne Denniger, and Latasha Fuller, Appellees.

No. 03–0580.

Supreme Court of Iowa.

Dec. 17, 2003.

Rehearing Denied Jan. 7, 2004.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, J. Patrick White, County Attorney, and Michael D. Brennan, Adam Pollack, David Tiffany, M. Victoria Dominguez, and Iris Frost, Assistant County Attorneys, for appellant.

Linda Del Gallo, State Appellate Defender, and David Arthur Adams, Assistant State Appellate Defender, for all appellees except Todd Michel.

Todd V. Michel, West Des Moines, pro se.

CADY, Justice.

In this appeal, we consider whether the district court correctly sustained motions to suppress evidence of the defendant-appellees' breath alcohol concentration acquired through the use of the DataMaster cdm, a governmentally approved device for taking such measurements. Numerous defendants in Johnson County moved to suppress this evidence alleging the State had failed to ensure the device's operation conformed to the Iowa Code and the Iowa Administrative Code. The district court sustained the motions, finding one of the statutory prerequisites for using the Data-Master was not satisfied. We granted discretionary review of the district court's ruling and now reverse and remand these cases for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

Between August 15, 2001, and February 11, 2003, the State filed trial informations charging each of the defendant-appellees in this consolidated proceeding with operating a motor vehicle while intoxicated in violation of Iowa Code section 321J.2 (2003). Six of the appellees later filed motions to suppress evidence of their breath alcohol concentration that had been acquired through the use of a governmentally approved measurement device, the DataMaster cdm (DataMaster). The remaining appellees later joined in the motions advanced by the first six appellees.

The district court heard evidence pertinent to the motions to suppress during a two-day hearing.[1] One witness who testified at the hearing was John Fusco, the president and CEO of the company that manufactures the DataMaster. Fusco explained the normal process undertaken to acquire a breath sample with the device and the mechanics and science behind the device's operation. Robert Monserrate, one of the officials in charge of alcohol concentration testing for the division of

---

1. While this evidence informed the district court for its anticipated deliberations on the propriety of the actual operation of the Data-Master by law enforcement officers, the district court's ultimate ruling on the motions to suppress was limited to an interpretation of the statutory prerequisites for using the device. Thus, the district court did not fully reach additional aspects of the appellees' challenges to the breath alcohol concentration evidence, and nor do we. Instead, these issues will have to be revisited on remand, with our opinions in this appeal and—perhaps more importantly—in State v. Stratmeier, 672 N.W.2d 817 (Iowa 2003) (also decided today), as a guide.

criminal investigation criminalistics laboratory (DCI lab) of the department of public safety, provided additional testimonial evidence. His testimony focused on the DataMaster's operation in Iowa and the training methods employed by the State to help law enforcement officers properly operate the device.

After taking the evidence presented during the hearing under advisement, the district court issued a ruling sustaining the appellees' motions to suppress. In its ruling, the district court observed it was "clear that no uniform methods for the operation of the [DataMaster] were ever submitted to the Commissioner of Public Safety [(commissioner)] for review or adoption" and "the commissioner has done *nothing* to adopt approved methods for the DataMaster." For this reason, the district court concluded that the State had failed to meet a statutory requirement that the breath alcohol concentration measurements be taken by using "devices *and methods* approved by the commissioner," making the measurements inadmissible. Iowa Code § 321J.11 (emphasis added); *see also id.* §§ 321J.2(8), 321J.15. The State sought and we granted discretionary review of the district court's ruling.

## II. Standard of Review.

Although the parties agree error has been preserved, they disagree over the standard of review applicable to this appeal. A similar disagreement arose in one of our prior cases involving issues similar to those presented in this appeal, and we find our observations in that case applicable here:

Defendant contends the issue centers on the States failure to produce the requisite foundation for the admission of evidence. From this premise he argues our review is [for] an abuse of discretion. *See State v. Hershey,* 348 N.W.2d 1, 2 (Iowa 1984) ("Foundational questions are to be determined by the court. Our review is for abuse of discretion.") (citations omitted). The State, on the other hand, asserts our review is on errors of law because the issue is one of statutory interpretation. *See State v. Davis,* 271 N.W.2d 693, 695 (Iowa 1978) ("Where the issue on appeal is not one of fact but rather one of statutory interpretation and application, the supreme court is not bound by trial courts determinations of law.").

This case more closely resembles *Davis* in that "the operative facts and inferences are not controverted," *id.,* and the result will turn on the construction of Iowa Code [section 321J.11].[2] We thus reject defendant's contention which, in the final analysis, would compel us to accept the district court's statutory interpretation, absent an abuse of discretion.

*State v. Stoneking,* 379 N.W.2d 352, 353–54 (Iowa 1985).

## III. Approval of "Devices and Methods."

The use and operation of the DataMaster is contemplated by both statute and administrative rule. Pursuant to Iowa Code section 321J.11, law enforcement officers must use "devices and methods approved by the commissioner" to "take a

**2.** Our conclusion on the applicable standard of review for this case is reinforced by the fact the district court's sustention of the appellees' motions to suppress was based on the State's failure to meet the requirements of Iowa Code section 321J.11, not section 321J.15. *See also* Iowa Code § 321J.2(8) (2003). Section

321J.11 deals specifically with the proper use of a breath alcohol concentration measurement device whereas section 321J.15 provides that proof that a measurement was taken properly establishes an evidentiary foundation for the admission of the measurement at trial.

specimen of a person's breath or urine for the purpose of determining the alcohol concentration." This testing is important for the initial assessment of whether an individual is intoxicated, but it is also important for later prosecutions:

Upon the trial of a civil or criminal action or proceeding arising out of acts alleged to have been committed by a person while operating a motor vehicle in violation of section 321J.2 or 321J.2A, evidence of the alcohol concentration or the presence of a controlled substance or other drugs in the person's body substances at the time of the act alleged as shown by a chemical analysis of the person's blood, breath, or urine is admissible. If it is established at trial that an analysis of a breath specimen was performed by a certified operator using a device intended to determine alcohol concentration and methods approved by the commissioner of public safety, no further foundation is necessary for introduction of the evidence.

Iowa Code § 321J.15; *see also id.* § 321J.2(8). Ultimately, both sections 321J.11 and 321J.15 require the use of "devices and methods approved by the commissioner." *Id.* § 321J.11; *accord id.* § 321J.15; *see also State v. Hansen,* 203 N.W.2d 216, 222–23 (Iowa 1972) (construing the statutory requirements for compliance with section 321J.11 (then numbered section 321B.4)). However, the most important aspect of these statutes for this appeal is the prerequisite that the commissioner approve both the devices and methods used.

The commissioner has attempted to satisfy this approval requirement by promulgating Iowa Administrative Code rule 661–

7.2, which, at the time of the suppression hearing,[3] provided, in part:

7.2(1) A peace officer desiring to perform direct testing of a subject's breath for the purpose of determining the alcohol concentration shall employ, or cause to be used, a breath testing device of a type meeting the minimum performance requirements established by [certain federal regulations].... The operator of the device shall proceed in accordance with the instructions furnished by the division of criminal investigation criminalistics laboratory, and shall have been certified as competent in the operation of the breath testing device. All certifications of devices shall be made by the division of criminal investigation criminalistics laboratory. All certifications of operators shall be made by the division of criminal investigation criminalistics laboratory or a designee. A designee shall be a person trained and certified by the division of criminal investigation criminalistics laboratory.

. . .

7.2(3) Although any breath testing device that meets the minimum performance requirements established by the National Highway Traffic Safety Administration, and cited in subrule 7.2(1), is authorized by the commissioner to be employed or to be caused to be used to determine the alcohol concentration, the following devices are being used in Iowa and meet those standards:

. . .

b. Datamaster cdm, National Patents Analytical Systems, Inc.

There is no dispute that the commissioner has properly approved the use of the Data-

---

**3.** Iowa Administrative Code rule 661–7.2 was amended subsequent to the district court's ruling in this case. *See* May 14, 2003 Iowa Admin. Bull. at 1482–83 (ARC 2481B, adopted and filed emergency, effective May 1, 2003). While we note this amendment, we draw no conclusions from its promulgation.

Master as a breath testing device. Iowa Admin. Code r. 661–7.2(1), (3)(*b*); *see also Bruno v. Iowa Dep't of Transp.*, 603 N.W.2d 596, 598 (Iowa 1999) ("We interpret [Iowa Administrative Code rule 661–7.2(3) ] as verifying that each of the foregoing devices is approved for purposes of testing alcohol concentration in breath pursuant to section 321J.11."). However, in attempting to satisfy the requirement that the commissioner approve the methods for using the DataMaster, the rule provides only that "[t]he operator of the [approved] device shall proceed in accordance with the instructions furnished by the [DCI lab]." Iowa Admin. Code r. 661–7.2(1). It is this portion of the rule that gives rise to the core controversy in this case.

The State contends that the commissioner's promulgation of administrative rule 661–7.2 and the actions of the DCI lab in furtherance of the rule sufficiently meet the statutory requirement that the commissioner approve the methods for breath alcohol concentration measurement. It argues that written instructions and ongoing training provided by the DCI lab ensure that the breath testing system is foolproof and its results reliable. Moreover, the State points to several statutory provisions and interpretive principles that indicate any delegation of supervisory authority by the commissioner to the DCI lab is both contemplated and welcomed in the administrative scheme created by the legislature.

The appellees argue that section 321J.11 contemplates no delegation of supervisory authority of any sort by the commissioner.[4] They believe the DCI lab's written instructions and training are insufficient to meet the statutory requirements of chapter 321J. Instead, they assert that the legislature intended for direct approval of the methods of breath testing by the commissioner alone. Any other approval arrangement, they contend, undermines the purpose of the approval requirement and the presumed evidentiary reliability of a properly conducted breath alcohol concentration measurement. *See State v. Steadman*, 350 N.W.2d 172, 174 (Iowa 1984) ("[A]n important purpose of the stringent chapter 321[J] requirements is to guarantee the reliability and accuracy of test results."). Thus, the current arrangement—including some delegation of supervisory authority to the DCI lab—is invalid and any testing conducted pursuant to it should be invalidated.

As both parties note, our prior cases in this area have made clear that one of the overarching purposes of the section 321J.11 requirements is to ensure "the reliability and accuracy of test results." *Id.; accord State v. Schlemme*, 301 N.W.2d 721, 723 (Iowa 1981). Although the appellees thoughtfully invoke this purpose in support of their claim, we do not believe that it is offended by the approval scheme created by the commissioner. Instead, we believe the commissioner's choice to approve the methods for breath testing by referencing

4. We have not previously encountered the claim made by the appellees, although we have considered section 321J.11 (or its predecessor statutes) on a number of prior occasions. *See State v. Steadman*, 350 N.W.2d 172, 173–75 (Iowa 1984); *State v. Hershey*, 348 N.W.2d 1, 2–3 (Iowa 1984); *State v. Young*, 232 N.W.2d 535, 536–38 (Iowa 1975); *State v. Berch*, 222 N.W.2d 741, 744–45 (Iowa 1974); *State v. Hansen*, 203 N.W.2d 216, 222–23 (Iowa 1972); *see also State v. Geinzer*, 406 N.W.2d 457, 457–59 (Iowa Ct.App.1987). In fact, the State contends that some of our prior opinions in this area conveyed a tacit approval of the way by which the commissioner has approved methods for breath testing. *See Steadman*, 350 N.W.2d at 174; *Hershey*, 348 N.W.2d at 2; *Geinzer*, 406 N.W.2d at 457. While this may be the case, we feel it is necessary to specifically and fully address the issue raised by the appellees.

the written instructions and training held or generated by the DCI lab is consistent with the Iowa Code and may actually better ensure the reliability of breath alcohol concentration measurements.

The commissioner is the chief executive officer of the department of public safety (department). Iowa Code § 80.2. The department has a broad range of duties, including preventing crime, detecting and apprehending criminals, and enforcing the law generally. *Id.* § 80.9. To help accomplish these duties, the legislature has denominated several divisions within the department and put these divisions under the supervision of the commissioner. *See id.* § 80.17. One of these divisions is the commissioner's own office. *Id.* § 80.17(1). Another is the division of criminal investigation, in which the DCI lab operates. *Id.* § 80.17(3). Importantly, in outlining the general allocation of duties to these divisions within the department, the legislature clearly contemplated some exchange or conveyance of duties and responsibilities from the commissioner to the particular divisions in which expertise in a subject area could be expected. *See id.* § 80.17 ("Nothing in the aforesaid allocation of duties shall be interpreted to prevent flexibility in interdepartmental operations or to forbid other divisional allocations of duties *in the discretion of the commissioner of public safety.*" (Emphasis added.)). To construe section 321J.11 so as to limit or eliminate the discretion of the commissioner granted by section 80.17 to allocate some of her duties and responsibilities to a division under her supervision would be an untenable, illogical, and unacceptable result. *See In re Detention of Swanson,* 668 N.W.2d 570, 574 (Iowa 2003); *see also State v. Casey's Gen. Stores, Inc.,* 587 N.W.2d 599, 601 (Iowa 1998) ("[W]e construe statutes that relate to the same or a closely allied subject together so as to produce a harmonious and consistent body of legislation.").

Moreover, we believe it is possible that the commissioner's failure to delegate some supervisory authority over the methods for breath alcohol concentration measurement could itself run the risk of creating the very same reliability concerns raised by the appellees. In the absence of any delegation, those with expertise in the devices and methods of breath testing—the DCI lab—could be virtually cut from the process of approving such devices and methods. Although the commissioner might still seek the advice and consent of the DCI lab officials, the knowledge and experience of these experts could be lost in the administrative structure. The system as it currently stands permits direct and thorough consideration of breath testing devices and methods by individuals with the expertise and ability to fully understand and train others in the devices' proper operation. This likely increases the reliability of breath testing to the benefit of both the State and individual defendants.

Ultimately, we find no fault with the process by which the commissioner has approved the methods for breath alcohol concentration testing. These methods are being supervised within the agency under her control by a division specifically approved by her to supervise the methods. This approach is both contemplated and welcomed by the administrative scheme created by the legislature. Moreover, we believe this approach allows added expertise and safeguards that likely make breath testing even more reliable than if the commissioner was to personally sign-off on every aspect of every device and method. We conclude the commissioner has approved the devices *and* methods for breath testing in Iowa, and the district court incorrectly sustained the appellees'

motions to suppress based on its conclusion that such approval had not been made.

## IV. Conclusion.

We reverse and remand these cases for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**