**IN THE COURT OF APPEALS OF IOWA**

No. 13-1938
Filed October 1, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**BENJAMIN LYON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Carol L. Coppola, District Associate Judge.

        Benjamin Lyon appeals from his conviction for operating while intoxicated, second offense.  **AFFIRMED.**

        Brandon Brown of Parrish, Kruidenier, Dunn, Boles, Gribble & Gentry, L.L.P., Des Moines, for appellant.

        Thomas J. Miller, Attorney General, Tyler J. Buller, Assistant Attorney General, John P. Sarcone, County Attorney, and Maurice Curry and Olu Salami, Assistant County Attorneys, for appellee.

        Considered by Danilson, C.J., and Vogel and Bower, JJ.

**PER CURIAM.**

Benjamin Lyon appeals from his conviction for operating while intoxicated, second offense. He first asserts the traffic stop was not supported by reasonable suspicion, because the arresting officer was too far from Lyon's vehicle to see whether his license plate was properly illuminated. He further argues the headlights of the officer's vehicle interfered with his observation that the plate lights were not operable. Lyon also claims his rights under Iowa Code section 804.20 (2013) were violated, arguing that the officer misinformed him of his rights under this code section.

We conclude Lyon's section 804.20 claim fails, given the police officer had no duty to explain to Lyon the purpose of his phone calls, and Lyon's rights under this section were otherwise satisfied. Additionally, the police officer was close enough to view whether Lyon's license plate was illuminated at an approximate distance of fifty feet, and therefore the traffic stop was supported by reasonable suspicion. Consequently, we affirm Lyon's conviction.

**I. Factual and Procedural Background**

On May 31, 2013, at approximately 2:00 a.m., Polk County Sheriff's Deputy Jason Tart observed Lyon's vehicle turning from northbound on Main Street to eastbound on Second Avenue in Des Moines. At the point Lyon's vehicle passed Deputy Tart, he observed that Lyon's license plate lights were not working. Consequently, he followed Lyon, dropping back so as not to have the

trooper vehicle illuminate the license plate.[1]  He then proceeded to stop Lyon. After requesting that Lyon exit the vehicle, Deputy Tart informed him that the reason he pulled over Lyon's vehicle was that the license plate lights were burned out.  Deputy Tart performed field sobriety tests on Lyon, including a walk-and-turn and a one-leg stand, both of which Lyon failed.  Lyon then refused to take the preliminary breath test.   Deputy Tart took Lyon into custody and transported him to the Polk County jail.

Once at the station, Deputy Tart read the implied consent advisory and gave Lyon *Miranda* warnings.  Lyon indicated he understood his rights.  Deputy Tart asked Lyon who he wanted to call, to which Lyon responded, "I need to call two people, if [I] may."   Pursuant to the transcript of the video recording introduced at the suppression hearing, the following exchange occurred:

> Deputy Tart: You can call as many—you can call a friend, you can call a family member, you can call an attorney—I don't—you can call whoever you want, within reason.
> [Deputy Tart retrieved phone numbers from Lyon's phone.]
> Deputy Tart: Is that the only numbers you need out of there?
> Lyon: Yes.
> Deputy Tart: Which one [of the numbers] do you want to call first?
> Lyon: Hmm.  The—uh—I'm gonna call someone first to get me out of here, correct?  Is that—I mean—the main objective for me?  I mean—
> Deputy Tart: You know what honestly?
> Lyon: Yeah?
> Deputy Tart: It's not—it's not up to me what you want to do. If you want to bond out, that's—that's your prerogative.
> Lyon: No, no, I understand.
> Deputy Tart: These phone calls are just the preference of how you want to call them.

---

[1] Video from Deputy Tart's dashboard camera was entered into evidence at the suppression hearing.  The video showed Deputy Tart following Lyon for approximately thirty seconds before initiating the traffic stop.

After this exchange Lyon left two voicemail messages and spoke briefly with his father. Deputy Tart asked if Lyon would consent to a DataMaster breath sample pursuant to the implied consent law, which Lyon refused. Deputy Tart explained the license revocation and gave Lyon a copy of the refusal form.

Lyon was charged with driving while intoxicated, second offense, in violation of Iowa Code section 321J.2 (2013). Lyon filed a motion to suppress the results of the traffic stop, claiming it was not supported by reasonable suspicion, as well as arguing his rights under section 804.20 had been violated, and therefore his refusal of the breath test should be suppressed. After a hearing, the district court denied the motion, and the case proceeded to a jury trial. On September 26, 2013, the jury returned a verdict of guilty. Lyon appeals.

## II. Whether the Traffic Stop was Supported by Reasonable Suspicion

Lyon first asserts the investigatory stop was not supported by reasonable suspicion because Deputy Tart's observation that Lyon's license plate lights were not working was not made around or less than fifty feet, as required by Iowa Code section 321.388. He argues that Deputy Tart was outside the fifty-foot requirement at the point he began to formulate his belief Lyon's lights did not illuminate the license plate, and as he approached, the police vehicle's headlights illuminated the plate so as to impede Deputy Tart's observations. Consequently, he claims, the district court erred in denying his motion to suppress.

We review constitutional claims de novo. *State v. Kinkead*, 570 N.W.2d 97, 99 (Iowa 1997). Under this standard we must "make an independent evaluation of the totality of the circumstances as shown by the entire record." *Id.*

(internal citation omitted). Though we give deference to the factual findings of the district court, we are not bound by those findings. *State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001).

The Fourth Amendment of the United States Constitution requires that an investigatory stop be supported by reasonable suspicion that criminal activity may be afoot. *Id.*

> When a person challenges a stop on the basis that reasonable suspicion did not exist, the State must show by a preponderance of the evidence that the stopping officer had specific and articulable facts, which taken together with rational inferences from those facts, to reasonably believe criminal activity may have occurred.

*State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004). Additionally, "[w]hether reasonable suspicion exists for an investigatory stop must be determined in light of the totality of the circumstances confronting the officer, including all information available to the officer at the time the officer makes the decision to stop the vehicle." *Id.*

Iowa Code section 321.388 makes it unlawful for the license plate to not have a working light. Specifically, this section requires that:

> Either the rear lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration place and render it clearly legible from a distance of fifty feet to the rear. When the rear registration plate is illuminated by an electric lamp other than the required rear lamp, the two lamps shall be turned on or off only by the same control switch at all times when headlamps are lighted.

Iowa Code § 321.388.

Our court has required that, to satisfy the reasonable suspicion of an investigatory stop pursuant to this infraction, the officer cannot be too far outside the fifty-foot requirement at the point he makes the decision to stop the vehicle.

*State v. Reisetter*, 747 N.W.2d 792, 794 (Iowa Ct. App. 2008). However, our court has clarified this requirement and held that:

> [I]f the deputy had testified that he observed the plate from something that would approximate fifty feet, and it did not appear to be illuminated so as to be legible, we would likely find the stop reasonable, as it is impossible to measure the precise distance between two moving vehicles.

*Id.*; *see also State v. Tyler*, 830 N.W.2d 288, 295 (Iowa 2013) ("This Code section requires illumination sufficient to render the license plate clearly legible.").

At the suppression hearing, the following exchange occurred between defense counsel and Officer Tart:

> Q: So you know when you first observed Mr. Lyon that you were on Grant Street; is that fair to say? A: That's correct.
> Q: All right. And Mr. Lyon, based on your report, he was northbound on Main Street; is that correct? A: That's correct.
> Q: Is that the point when you first observed what you believed to be an unilluminated license plate? A: Actually, no, I didn't realize the license plate lights were defective until he actually went eastbound onto Second Street. When he turned from—
> Q: Let me just stop you there, we'll get to that. So when you first observed Mr. Lyon's vehicle, you did not detect or were alerted to any fact that the license plate light may be defective or not illuminating properly, is that correct? A: I'd have to read my report to be totally for sure. But the way it looked to me is that it wasn't lit the way it should be.
> Q: Okay. A: So I just kept my eyes on it.
> . . . .
> Q: When you were following him driving your vehicle in the same direction as Mr. Lyon's vehicle, that's when the suspicion that Mr. Lyon's license plate light was out began to materialize? A: Yes.
> Q: So any point up to that point when you were following Mr. Lyon on his eastbound travel on Second Street, you didn't have any observation conclusively that led you to believe or suspect that the license plate was burned out; is that correct? A: As soon as he turned onto Second Street from Main, I knew it was out.
> Q: Okay. A: It's not that hard to tell, it's the easiest thing to spot on a vehicle.

Deputy Tart then proceeded to testify that he dropped back so his headlights would not illuminate Lyon's license plate, in order to make sure Lyon's lights were, in fact, inoperable.

On redirect, the following exchange occurred between Deputy Tart and the State:

> Q: Deputy, in the video of the stop, would it be fair to say that the furthest distance you were [was] outside 50 feet?  A: Oh, yeah.
> Q: Probably outside of 75 feet?  A: Yes, it's a fair judgment, yes.
> Q: And the closest time was when you were, in essence, almost bumper-to-bumper at the stop?  A: Yes.

Additionally, the video recording from Deputy Tart's dashboard camera was entered into evidence.  This video showed that Deputy Tart did not activate his lights until he was only a few car lengths behind Lyon's vehicle.

The video evidence, combined with the testimony at the suppression hearing, establishes Deputy Tart "observed the plate from something that would approximate fifty feet."  *See Reisetter*, 747 N.W.2d at 794.  As an initial matter, the facts in this case are distinguishable from those in *Reisetter*, given the officer in *Reisetter* activated his lights to stop the vehicle without ever being within fifty feet of the defendant's car.  Additionally, Lyon's argument the officer's headlights illuminated Lyon's license plate to the point that it prevented Deputy Tart from accurately observing whether or not the license plate was visible, does not negate the fact the officer saw—from within approximately fifty feet—that Lyon's license plate lights were not working.  Therefore, the fifty-foot requirement dictated by section 321.388 was satisfied, and Deputy Tart had reasonable suspicion a violation was occurring pursuant to this code section.  Consequently,

no constitutional provisions were violated, and the district court properly denied Lyon's motion to suppress.

## III. Whether Lyon's Rights Under Section 804.20 Were Violated

Lyon next claims his rights were violated under Iowa Code section 804.20 because Deputy Tart did not fully advise him of his rights under this section when Lyon inquired about the nature of the phone calls. Consequently, he argues, the district court erred in failing to suppress evidence that he refused the DataMaster test.

We review the district court's ruling on statutory rights for correction of errors at law. *State v. Stratmeier*, 672 N.W.2d 817, 820 (Iowa 2003).

Iowa Code section 804.20 states:

> Any peace officer or another person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney. If a call is made, it shall be made in the presence of the person having custody of the one arrested or restrained . . . . A violation of this section shall constitute a simple misdemeanor.

This section conveys to a detained person the right to call and consult with a friend, family member, or attorney. *Id.* However, it "does not require a police officer to affirmatively inform the detainee of his statutory right," though the officer may not deny these rights exist. *State v. Hicks*, 791 N.W.2d 89, 94 (Iowa 2010) (internal citation omitted).

As the district court found: "[T]he officer gave Mr. Lyon every opportunity to make any phone call Mr. Lyon wanted to make and did nothing to limit those

calls." This assessment is supported by the record. Lyon conceded the offer to make telephone calls was made after Deputy Tart read the implied consent form to him. Moreover, there is no indication Deputy Tart denied Lyon the opportunity to call whomever he wanted, and though he did not explain the exact rights conveyed to Lyon under section 804.20, at no point did Deputy Tart attempt to impede Lyon's rights. This is all that is required under this section. *See id.* ("The guaranteed right is a limited one and only requires a peace officer to provide the suspect with a reasonable opportunity to contact an attorney or family member."). Consequently, no violations of Lyon's rights under Iowa Code section 804.20 occurred, and the district court properly denied his motion to suppress.

Having reviewed Lyon's claims, we affirm his conviction for operating while intoxicated, second offense.

**AFFIRMED.**